UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM E. VALENTINE III, | ) | CASE NO. 5:08-CV-00993-JRA |
| Plaintiff, | ) ) | JUDGE JOHN R. ADAMS |
| v. | ) ) | |
| TED STRICKLAND, et al., | ) ) | **MEMORANDUM OF OPINION AND ORDER** |
| Defendant. | ) ) ) | [Resolving Docs. 30, 31] |

### I. Background

William E. Valentine III ("Plaintiff") is a convicted sex offender who completed his prison sentence and received his final release from parole in 2005. At that time, Plaintiff was classified as a "sexually oriented offender" under Ohio's version of Megan's Law (H.B. 180). Under that law, Plaintiff was required to register his address with the Summit County Sheriff annually for a period of ten years, without community notification.

Plaintiff was convicted of rape in February 1985, and was sentenced to twenty-five years' incarceration. He was paroled in January 2003, and after complying with the terms and conditions of his parole, was released from parole supervision on February 17, 2005. In January 2006, Plaintiff signed a Notice of Registration Duties of Sexually Oriented Offender or Child-Victim Offender, in which he acknowledged that he had been labeled a "sexually oriented offender." He was notified that he would be required annually to register his address, place of employment and school with the county sheriff for a period of ten years, and was further notified that failure to register would result in criminal prosecution.

On July 27, 2006, Congress passed the federal Adam Walsh Child Protection and Safety Act of 2006. In compliance with the federal legislation, Ohio enacted its version of the Adam

Walsh Act (S.B. 10) ("AWA") on July 1, 2007, which became fully effective on January 1, 2008. Ohio Rev. Code ("R.C.") § 2950, *et seq*. The AWA is intended to provide adequate notice and information in order to protect the public from convicted sex offenders. R.C. § 2950.02. Dangerousness or the likelihood of recidivism are not considered in determining classification under the new AWA tiered system, and Plaintiff was reclassified as a Tier III sex offender based solely upon his previous rape conviction. R.C. § 2950.01(G)(1)(a). A Tier III offender is subject to both registration every ninety days for the rest of his life and to community notification, regardless of his previous notification status. Further, the AWA expanded residency restrictions, thereby prohibiting plaintiff from residing within 1,000 feet of a school, preschool, or day care facility. The AWA applies retroactively to all offenders required to register under Megan's Law as of July 1, 2007. Failure to register or verify an address carries up to a ten year prison term.

On November 26, 2007, the Ohio Attorney General's Office sent Plaintiff a letter informing him of how the AWA's enactment would affect him. The letter notified Plaintiff of his reclassification as a Tier III sex offender based on his previous rape conviction, and outlined the heightened registration, notification, and residency requirements. It further notified Plaintiff that, although no hearing would be held prior to reclassification, he had a right to challenge the reclassification within sixty days of the date of the notice by filing a petition in the Court of Common Pleas in his county of residence. *See* R.C. § 2950.031(E).

On April 17, 2008, Plaintiff, acting pro se, filed this action under 42 U.S.C. § 1983 against Ohio Governor Ted Strickland, Ohio Bureau of Identification and Investigation employee Steven Raubenolt, Summitt County Sheriff Drew Alexander, and Ohio Adult Parole Authority Chairman Gary Croft (together "Defendants"). The Court has dismissed Defendant Croft (Doc. 3). The case has proceeded solely on Plaintiff's claims for injunctive relief against the remaining

Defendants in their official capacities for alleged violations of the *Ex Post Facto* Clause, denial of due process, and denial of equal protection.  Defendants have moved for summary judgment on all three claims.

## II.  Legal Analysis

### A.  Standard of Review

Summary judgment is proper if the pleadings and depositions, together with any affidavits, "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The burden of establishing that there is no genuine issue of material fact lies with the moving party.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  In evaluating a motion for summary judgment, the Court must construe the evidence and draw all inferences in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).  The central question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

Ordinarily, once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party, who may not simply rely on his pleadings, but must "produce evidence that results in a conflict of material fact to be resolved by a jury."  *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).  However, where, as here, a motion for summary judgment is unopposed, the district court must examine the motion to ensure that the moving party has fulfilled its initial burden of demonstrating an absence of a genuine issue of material fact.  *Guarino v. Brookfield Township Trs.*, 980 F.2d 399, 410 (6th Cir. 1992).  The court must intelligently and carefully review the legitimacy of the motion, considering the possibility of

evidentiary misstatements by the moving party and keeping in mind the context in which the evidence arose.  *Id*. at 407.  The Sixth Circuit has explained:

> In the absence of a response, the court must review carefully those portions of the submitted evidence designated by the moving party.  Neither the trial nor appellate court, however, will *sua sponte* comb the record from the partisan perspective of an advocate for the non-moving party.  Rather, in the reasoned exercise of its judgment the court may rely on the moving party's unrebutted recitation of the evidence, or pertinent portions thereof, in reaching a conclusion that certain evidence and inferences from evidence demonstrate facts which are "uncontroverted."

*Id*. at 410.

### B. Ex Post Facto Claim

Plaintiff alleges that the AWA is a violation of the *Ex Post Facto* Clause because it applies to him retroactively and increases his burden of registering as a sexual offender.  U.S. Const. art. I, § 10, cl. 1.  As a threshold issue, the *Ex Post Facto* Clause applies only to criminal statutes.  *California Dep't of Corr. v. Morales*, 514 U.S. 499, 504 (1995).  Specifically, the Clause applies only to laws that "retroactively alter the definition of crimes or increase the punishment for criminal acts."  *Id*.

The AWA does not change the definition of Plaintiff's underlying crime.  Therefore, the issue now before the Court is whether the AWA's reclassification and heightened requirements constitute an increase in "punishment" attached to Plaintiff's crime.  To determine whether the AWA is criminal or civil in nature, a court must first determine the legislature's statutory intent.  If the legislative intent was to inflict punishment, the statute is considered punitive in nature.  *Smith v. Doe*, 538 U.S. 84, 92 (2003) (analyzing and sustaining the Alaskan Sex Offender Registration Act, with requirements very similar to Ohio's AWA statute, in light of an *ex post facto* challenge).  If, however, the legislature intended to enact a civil and non-punitive

legislative scheme, a court must further determine whether the statutory scheme is so punitive in nature that it negates the General Assembly's stated intent. *Id*. (citing *Kansas v. Hendricks*, 521 U.S. 346, 361 (1997)). This two-step analysis is often referred to as the "intent-effects" test. *See e.g. State v. Cook*, 700 N.E.2d 570, 580 (1998); *Russell v. Gregoire*, 124 F.3d 1079, 1084 (9th Cir. 1997) (coining the term "intent-effects test").

### 1. Intent

First, the Court must evaluate whether the General Assembly's intent in promulgating R.C. Ch. 2950 was criminal or remedial, which "is first of all a question of statutory construction." *Hendricks*, 521 U.S. at 361 (internal quotation marks omitted). A statute's text and structure can be utilized to determine legislative intent. *Smith*, 538 U.S. at 92. Here, the General Assembly's intent is expressed in the statutory text itself. The legislature found that sex offenders "pose a risk of engaging in further sexually abusive behavior," and identified the "protection of members of the public from sex offenders" as a "paramount governmental interest." R.C. § 2950.02(A)(2). Further, the statute explicitly states that "the exchange or release of the information is *not punitive*." *Id*. at § 2950.02(B) (emphasis added). In this case, analysis of the AWA's plain text indicates that the General Assembly intended the statute to be civil in nature.

Other considerations, such as the manner of codification or the enforcement procedures established by the statute may be probative of the legislature's intent. *Smith*, 538 U.S. at 94. Arguably, because the notification and registration provisions of the AWA are codified in the "Crimes-Procedures" section of the R.C. (Title XXIX), they are inherently punitive in nature. Such placement, however, is not dispositive and "[t]he location and labels of a statutory provision do not by themselves transform a civil remedy into a criminal one." *Id*. Grouping

5

remedial penalties with the corresponding criminal offense within the Revised Code is logical and does not necessarily indicate a penal intent. Further, alerting convicted sex offenders of "the civil consequences of their criminal conduct does not render the consequences themselves punitive." *Id.* at 95-96; *see also Cook*, 700 N.E.2d at 581 (holding that the AWA's heightened registration requirement "serves the remedial purpose of protecting the local community," and that the notification requirement is an "objectively reasonable measure to warn those in the community who are most likely to be potential victims").

Accordingly, the Court finds that the intent of the General Assemble in imposing the AWA was to create a civil, non-punitive registration and notification scheme.

**2. Effects**

Having determined that the General Assembly had a civil intent, the Court must now examine whether the statute is so punitive in purpose or effect as to negate that intent. *Smith*, 538 U.S. at 92. In doing so, however, the Court must bear in mind that "only the clearest proof will suffice to override legislative intent and transform what has been determined a civil remedy into a criminal penalty." *Id.* (quoting *Hudson v. United States*, 522 U.S. 93, 100 (1997)) (internal quotation marks omitted).

In assessing the practical effects of the AWA on convicted sex offenders, the relevant factors include "whether, in its necessary operation, the regulatory scheme: has been regarded in our history and traditions as a punishment; imposes an affirmative disability or restraint; promotes the traditional aims of punishment; has a rational connection to a non-punitive purpose; or is excessive with respect to this purpose."[1] *Id.* at 97 (discussing the factors as set forth in

---

[1] Two of the original seven factors—whether the regulation applies only on a finding of scienter and whether the behavior to which it applies is already a crime—are not discussed in the analysis above. The Supreme Court determined that these factors are of little weight in AWA cases. *See Smith*, 538 U.S. at 105.

*Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-69 (1963)). Although these factors are relevant to our analysis, they are not necessarily exhaustive or dispositive as they were designed to apply to a variety of constitutional contexts.[2] *Id*.; *Doe v. Bredesen*, 507 F.3d 998, 1004-05 (6th Cir. 2007).

Historically, registration, reporting, and notification requirements are not traditional forms of punishment, nor do they impose an affirmative disability or restraint in light of the legislative intent. *Bredesen*, 507 F.3d at 1005 (upholding against an *ex post facto* challenge, Tennessee's AWA law that mandates reclassification, life-time reporting, and GPS surveillance). Importantly, the Supreme Court recently held that lifetime registration and monitoring of sex offenders is "less harsh" than other penalties that the Court has traditionally deemed non-punitive.[3] *Smith*, 538 U.S. at 100.

The AWA does not extend the length of incarceration or prevent offenders from seeking employment, changing residences or travelling. Admittedly, the AWA seeks to promote deterrence, a traditional aim of punishment. Deterrent effects alone, however, will not render the statute punitive for the purpose of *Ex Post Facto* Clause analysis, as such a result would "severely undermine the government's ability to engage in effective regulation." *Bredesen*, 507 F.3d at 1005 (quoting *Cutshall v.Sundquist*, 193 F.3d 466, 475-76 (6th Cir. 1999)) (internal citation omitted). Virtually all civil and criminal penalties are intended to have a deterrent effect, therefore, deterrence alone cannot be dispositive. *See e.g. Bredesen*, 507 F.3d at 1005-06.

---

[2] The factors emerged from double jeopardy, Sixth and Eighth Amendment, and Bill of Attainder jurisprudence, and are therefore applied broadly. *Mendoza-Marinez*, 372 U.S. at 168-69.

[3] Examples of traditionally non-punitive sanctions that were highlighted by the *Smith* Court as being more harsh than AWA sanctions include revocation of medical licenses, preclusion of work as a banker, and preclusion of work as a union official. *Smith*, 538 U.S. at 100 (citing *De Veau v. Braisted*, 363 U.S. 144 (1960); *Hawker v. New York*, 170 U.S. 189 (1898)).

Further, the requirement of a rational connection to a non-punitive purpose is the most significant factor in the court's consideration of the AWA's registration requirement. *Smith*, 538 U.S. at 102-03.  However, this factor does not demand that a statute fit perfectly with the non-punitive aims it seeks to advance. *Id*.  The AWA clearly has a rational connection to the stated non-punitive purpose of public welfare and safety in that it accomplishes the goal of keeping the public more aware and alert regarding the presence of sexual offenders in the area. *See* R.C. § 2950.02.  Therefore, due to the strong public safety purpose, this factor weighs heavily in favor of upholding the statute.

As to the final factor, lifetime registration, notification, and residency restrictions are arguably excessive, particularly because the likelihood of recidivism or dangerousness is not evaluated for each offender individually.  Plaintiff could have argued further that the classification of offenders based solely on the underlying criminal offense may indicate a punitive intention.  However, "the State's determination to legislate with respect to convicted sex offenders as a class, rather than require individual determination of their dangerousness, does not make the statute a punishment under the *Ex Post Facto* Clause." *Smith*, 538 U.S. at 104.  The excessiveness factor involves whether the regulatory means adopted by the legislature are reasonable in light of the non-punitive objective, not whether the legislature has adopted the best possible means to remedy the problem. *Id*. at 105.

Here, the General Assembly's primary objective is to protect and inform the general public.  Requiring a convicted sex offender to register his name and address with the State on a quarterly basis for life is reasonably related to the non-punitive objective of public safety.  Further, the AWA's tiered classification system takes into account the nature of the underlying offense in assessing the length and extent of the sanction.  There are serious concerns about the

"frightening and high risk of recidivism" posed by sex offenders, and when convicted sex offenders reenter society, "they are much more likely than any other type of offender to be rearrested for a new rape or sexual assault." *See McKune v. Lile*, 536 U.S. 24, 33-34 (2002) (citing U.S. Dept. of Justice, Bureau of Justice Statistics, Sex Offenses and Offenders 27 (1997); U.S. Dept. of Justice, Bureau of Justice Statistics, Recidivism of Prisoners Released in 1983, p. 6 (1997)). Given the high risk of recidivism and threat to public safety, AWA's registration and notification requirements for Tier III offenders are not excessive.

Finally, it should be noted that numerous circuit courts, including the Sixth Circuit, have consistently and repeatedly rejected *ex post facto* challenges to state statutes that have retroactively required sex offenders convicted before the effective date to be subject to heightened registration, notification, and residency requirements. *See Bredesen*, 507 F.3d at 1007 (citing numerous federal circuit court opinions upholding similar statutes nationwide).

Consequently, Ohio's AWA is not a violation of the *Ex Post Facto* Clause and this Court grants Defendant's motion for summary judgment on this claim.

**C. Due Process Claims**

Plaintiff also alleges that the AWA violates the Due Process Clause of the Fourteenth Amendment. Pro se pleadings are generally liberally construed. *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam). As such, the Court will interpret Plaintiff's claim broadly, addressing both potential procedural and substantive aspects of Plaintiff's due process claim.

**1. Procedural Due Process Claim**

"The Fourteenth Amendment prohibits state actors from depriving an individual of life, liberty, or property without due process of law." *Cutshall*, 193 F.3d at 478 (citing *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 140-41 (6th Cir. 1997)). The Court must first

determine whether there is a constitutionally protected liberty or property right at stake. *Thomas v. Cohen*, 304 F.3d 563, 576 (6th Cir. 2002). The Sixth Circuit has explained:

> Procedural due process claims are examined under a two-part analysis. First, the court must determine whether the interest at stake is a protected liberty or property right under the Fourteenth Amendment. Only after identifying such a right do we continue to consider whether the deprivation of that interest contravened notions of due process.

*Id*.

Property interests are defined by existing "rules or understandings that stem from an independent source such as state law." *Cutshall*, 193 F.3d at 478 (quoting *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972)) (internal quotation marks omitted). Such property and liberty interests "attain this constitutional status by virtue of the fact that they have been initially recognized and protected by state law." *Paul v. Davis*, 424 U.S. 693, 710 (1976). "[T]he procedural guarantees of the Fourteenth Amendment apply whenever the State seeks to remove or significantly alter that protected status." *Id*. at 711.

Although Plaintiff fails to explicitly articulate a procedural due process claim, he appears to assert that he was deprived of due process by not having a hearing before his automatic re-classification under the AWA. Further, the AWA's heightened registration and notification requirements arguably stigmatize Plaintiff and impose restraints on his liberty and reputation.

First, the Supreme Court has foreclosed the possibility of procedural due process challenges to state sex-offender registry statutes that mandate registration of all convicted offenders. *Connecticut Dep't of Public Safety v. Doe*, 538 U.S. 1, 3 (2003) (holding that public disclosure of a state's sex offender registry without hearings to assess the offender's "current dangerousness" does not violate due process where registration is based on the fact of conviction alone). Specifically, when a sex offender classification applies automatically as a result of a

10

conviction, no hearing is required to determine the simple fact of an offender's conviction, because "[the] convicted offender has already had a procedurally safeguarded opportunity to contest [that fact]." *Id*. at 7.

Additionally, the Ohio Supreme Court held that a convicted sex offender plaintiff did not demonstrate deprivation of a protected liberty or property interest as a result of the registration requirement imposed without a hearing under the former Megan's Law. *State v. Hayden*, 773 N.E.2d 502, 505 (Ohio 2002) (defining a constitutionally protected liberty interest as "freedom from bodily restraint and punishment"). The court explained that "affording appellee a hearing under these facts would be nothing more than an empty exercise," because imposition of notification requirements under Megan's Law was simply based on a prior conviction for a sexually oriented offense, a fact that appellee could not contest. *Id*.; *See also Cutshall*, 193 F.3d at 478 (holding that Tennessee's sex offender registration and notification law did not implicate a liberty interest because the law "involve[d] no physical restraint" and "impose[d] no punishment").

Most recently, in *Doe v. Dann*, the plaintiffs challenged Ohio's AWA, asserting that they should "have a meaningful opportunity to challenge their proposed new classification and duties at a hearing with counsel before their new classifications and duties go into effect." *Doe v. Dann*, No. 1:08-cv-00220, 2008 WL 2390778, at *5 (N.D. Ohio June 9, 2008). Here, as in *Dann*, Plaintiff was previously classified as a "sexually oriented offender" and has subsequently been automatically reclassified by the AWA as a Tier III sex offender. *Id*. at *1. The Court determined that the AWA comports with due process requirements. *Id*. at *10-12 (holding that plaintiffs did not demonstrate a constitutionally protected property or liberty interest in avoiding

11

their new classifications or obligations, the new community notification requirements or residency restrictions).

As in *Connecticut Dep't of Public Safety*, the AWA does not assess Plaintiff's current dangerousness or threat of recidivism in the reclassification scheme. Under the AWA, classification of any particular offender is now a matter of legislative determination, based solely on his conviction. Beyond the underlying conviction, there are no relevant factual matters for judicial determination, and conducting a hearing would be futile.

To the extent, however, that Plaintiff wished to assert that certain facts regarding his conviction had not been disclosed, or to address any potential administrative errors in the review of his conviction record, the AWA provides a process for doing so. Offenders have the opportunity to request a hearing "as a matter of right" to contest their new classification within sixty days of notification under R.C. 2950.031(E). Otherwise, Plaintiff's reclassification as a Tier III sex offender and the corresponding requirements are based on the fact of his conviction alone—a fact that he already had the opportunity to contest or appeal. No liberty or property interest is implicated because there are no facts relevant to the statutory scheme that need to be established in a hearing.

Further, in *Connecticut Dep't of Public Safety*, the Supreme Court held that "even assuming, *arguendo*, that respondent has been deprived of a liberty interest, due process does not entitle him to a hearing to establish a fact that is not material under the Connecticut statute." *Connecticut Dep't of Public Safety*, 538 U.S. at 7 (addressing the alleged stigmatization of being listed on the sex offender registry without a hearing to assess dangerousness). As such, Plaintiff cannot assert a right to a hearing under the Due Process Clause.

As to any resulting stigmatization, the "stigma-plus" test is used to analyze procedural due process claims where a state action injures a plaintiff's reputation. *Doe v. Michigan Dep't of State Police*, 490 F.3d 491, 502 (2007). To invoke the Due Process Clause of the Fourteenth Amendment, a successful plaintiff must prove both injury to his reputation (the "stigma") and deprivation of a right previously held under state law (the "plus"), such as employment. *Id*. at 501-02 (citing *Paul v. Davis*, 424 U.S. 693, 701, 708 (1976)). In this case, Plaintiff has not proved that he has suffered any tangible harm beyond a potential injury to his reputation. As such, damage to Plaintiff's reputation alone does not constitute a protected liberty interest, and therefore does not invoke procedural due process protection.

**2. Substantive Due Process**

As Plaintiff's pleading is to be liberally construed, the Court will briefly address potential substantive due process claims. Plaintiff may have asserted that he has a constitutionally protected and fundamental right to privacy, and that registration and notification under AWA violate that right by public disclosure of his conviction and personal information.

The substantive component of the Due Process Clause protects "fundamental rights" that are so "implicit in the concept of ordered liberty" that "neither liberty nor justice would exist if they were sacrificed." *Palko v. Connecticut*, 302 U.S.319, 325-26 (1937) (overruled on other grounds by *Benton v. Maryland*, 395 U.S. 784 (1969)). However, there is no fundamental right to privacy that is deeply rooted in our Nation's history in the context of sex offender registration statutes. *See Michigan Dep't of State Police*, 490 F.3d at 500. The constitutionality of statutes that do not implicate a fundamental right are evaluated under a rational-basis standard of review, which is a highly deferential standard. *Id*. at 501. Specifically, the statute at issue must be

13

"rationally related to legitimate government interests." *Id.* (quoting *Washington v. Glucksberg*, 521 U.S. 702, 728 (1997)) (internal quotation marks omitted).

The General Assembly has articulated a legitimate government interest in protecting the safety and welfare of its citizens. *See* R.C. § 2950.02. Further, the Tier III offender sanctions, namely quarterly registration for life, community notification, and residency restrictions, appear to be rationally related to achieving the stated purpose of the legislation. As such, a potential substantive due process argument fails on the merits as well. Accordingly, summary judgment is hereby granted to Defendants on the due process claim.

### D. Equal Protection Claim

Lastly, Plaintiff claims that the AWA violates the Equal Protection Clause of the Fourteenth Amendment by requiring convicted sex offenders to register and be subject to community notification. The Equal Protection Clause requires that no state "deny to any person within its jurisdiction the equal protection of the laws," which the Supreme Court has characterized as a requirement that "all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting U.S. Const. amend. XIV, § 1). Rational basis review under the Equal Protection Clause is an extremely deferential standard. Unless the legislative classification at issue involves a suspect class, the general rule is that "legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *Id.* at 440. Such presumption of validity "can only be overcome by a clear showing of arbitrariness and irrationality." *Hodel v. Indiana*, 452 U.S. 314, 331-32 (1981).

Further, "[c]onvicted sex offenders are not a suspect class," and as such, the AWA is "subject to scrutiny under the rational basis test." *Cutshall* 193 F.3d at 482 (holding that

Tennessee's sex offender registration law is rationally related to the state's interest in public safety and law enforcement in light of the particular threat of sex reoffenders). As in *Cutshall*, here the General Assembly clearly stated that its governmental purpose is protecting the public. *See generally* R.C. § 2950.02. Requiring convicted sex offenders to register with the State and providing community notification are both rationally related to the General Assembly's stated purpose in enacting the AWA. The General Assembly incorporated specific legislative findings in the Ohio Revised Code, stating that "protection of members of the public from sex offenders…is a paramount governmental interest." R.C. 2950.02(A)(2). The State, therefore, is justified in "treating sex offenders differently from other offenders by requiring them to register." *Does v. Munoz*, 507 F.3d 961, 966 (6th Cir. 2007). Accordingly, Plaintiff's Equal Protection claim lacks merit and summary judgment is granted to Defendants.

### III. Conclusion

For the foregoing reasons, Defendants' motions for summary judgment are hereby granted on all claims. The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could be taken in good faith.

IT IS SO ORDERED.

DATED: August 19, 2009            */s/ John R. Adams*
                                                   Judge John R. Adams
                                                   UNITED STATES DISTRICT COURT